**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| J. L. JUSTIN HARRIS | ) | CASE NO. 3:10-cv-2045 |
| Plaintiff, | ) ) | JUDGE ZOUHARY |
| v. | ) ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff, J. L. Justin Harris ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On July 31, 2006, Plaintiff filed applications for DIB and SSI and alleged a disability onset date of January 1, 2005. (Tr. 32.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 32.) On April 10, 2009, an ALJ held Plaintiff's hearing by video conference. (Tr. 32.) Plaintiff appeared at the hearing with counsel and testified. (Tr. 32.) A vocational expert ("VE") also appeared and testified. (Tr. 32.)

On May 11, 2009, the ALJ found Plaintiff "not disabled." (Tr. 43.) On November 17, 2009, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 14.) After being afforded an extension of time to file a civil action to challenge the Commissioner's final decision (Tr. 1), Plaintiff timely filed this cause of action in this Court on September 13, 2010 (Doc. No. 1).

Plaintiff asserts two assignments of error: (1) the ALJ improperly gave more weight to the opinions of a non-examining source than the more restrictive opinions of a more recent examining source in his residual functional capacity ("RFC") assessment; and (2) the Commissioner failed to meet his burden of proving the existence of a significant number of jobs in the national economy that Plaintiff could perform because the ALJ's hypothetical to the VE did not accurately portray Plaintiff's limitations.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 45 years old, which is defined as a younger individual aged 18-49,

on the alleged disability onset date, but subsequently changed age category to closely approaching advanced age. (Tr. 41.) He has a high school education (Tr. 49, 66) and is able to communicate in English, but is functionally illiterate (Tr. 42). He has past relevant work as a tank (container) cleaner, and as a construction worker. (Tr. 72.)

### B. Medical Evidence

The following is a summary of Plaintiff's medical evidence relevant to the disposition of this case.

On February 12, 2007, state agency reviewing psychologist Dr. Carol Deatrick, Ph.D., performed a psychiatric review and mental RFC assessment of Plaintiff. (Tr. 275-91.) Dr. Deatrick found the following in her psychiatric review. Plaintiff was mildly limited in his abilities to perform activities of daily living and maintain social functioning; was moderately limited in his ability to maintain concentration, persistence, or pace; and had one or two episodes of decompensation, each of extended duration. (Tr. 285.) Dr. Deatrick summarized that Plaintiff's mental status was "essentially normal." (Tr. 287.)

Dr. Deatrick indicated the following in the "Summary Conclusions" section of her mental RFC assessment. Plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 289-90.) Plaintiff was not significantly limited in all other areas of functioning. (Tr. 289-90.)

Dr. Deatrick explained her summary conclusions in her Functional Capacity

3

Assessment as follows. Although Plaintiff "show[ed] some deficits in concentration, persistence, and pace," he was capable of very basic socialization, his adaptive skills were essentially intact, and he was able to perform simple, repetitive tasks. (Tr. 291.)

On March 1, 2007, state agency reviewing physician Dr. Thomas Renny, D.O., assessed Plaintiff's physical RFC. (Tr. 294-301.) Dr. Renny's assessment is as follows. Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; and could sit, stand, and walk for approximately 6 hours in an 8-hour workday with normal breaks. (Tr. 295.) Plaintiff was not limited in his ability to push and pull, except to the extent that he was limited in his ability to lift and carry. (Tr. 295.) Plaintiff could never climb ladders, ropes, or scaffolds; but otherwise could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 296.) Plaintiff had a limited ability to feel (Dr. Renny clarified that Plaintiff could feel "frequently"), but was otherwise unlimited in his ability to reach in all directions and perform gross and fine manipulation with his hands and fingers. (Tr. 297.) Plaintiff had no visual or communicative limitations. (Tr. 297-98.) As to environmental limitations, Dr. Renny indicated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and humidity; and that Plaintiff should avoid even moderate exposure to hazards such as machinery and heights. (Tr. 298.) Otherwise, Dr. Renny indicated that Plaintiff did not have any other environmental limitations. (Tr. 298.)

On March 28, 2008, Dr. Dorsey L. Gilliam, M.D., at Marion County Department of Jobs and Family Services, examined Plaintiff and filled out a medical source statement indicating his impression of Plaintiff's physical functional capacity. (Tr. 339-40.) Dr. Gilliam reported the following. Plaintiff suffered "very high blood pressure"; low back

pain; pain in both shoulders that limited Plaintiff's ability raise his arms; numbness in both legs; asthma; congestive hearth failure; and an inability to walk far distances. (Tr. 339.) Plaintiff could stand and walk for only 2 to 3 hours in an 8-hour workday and between 15 minutes to a half hour without interruption. (Tr. 340.) Plaintiff was not limited in his ability to sit. (Tr. 340.) Plaintiff could lift and carry 6 to 10 pounds occasionally. (Tr. 340.) Dr. Gilliam did not indicate how much Plaintiff could lift and carry frequently. (Tr. 340.)

Dr. Gilliam further reported the following. Plaintiff was moderately limited in his abilities to push and pull, bend, and perform repetitive foot movements. (Tr. 340.) Plaintiff was not significantly limited in his abilities to reach, handle, see, hear, and speak. (Tr. 340.) Plaintiff's limitations were expected to last for 12 or more months. (Tr. 340.) Dr. Gilliam did not provide an explanation of the bases for his conclusions, but instead directed any reader to "see exam." (Tr. 340.) Dr. Gilliam's alleged examination records do not appear to be in the record.

**C.      Hearing Testimony**

    **1.      Plaintiff's Hearing Testimony**

Plaintiff testified at his hearing as follows. Plaintiff lives with is father. (Tr. 50.) He is unable to work because he has "problems" with his back and legs. (Tr. 53.) He has numbness in his legs and shoulder and is not able to lift his arms. (Tr. 53.) His father has to help him put his clothes and shoes on. (Tr. 53.) His back has been bothering him for three or four years; his legs have been bothering him for three years. (Tr. 54.) He presently only visits emergency rooms for treatment of his pain. (Tr. 54.)

He takes medication for his pain, high blood pressure, asthma, and acid reflux, but the medication does not cause side effects. (Tr. 54-55.)

Plaintiff has trouble lifting objects because his back pain prevents him from bending down, and he is not able to keep his arms up to hold anything. (Tr. 55-56.) He also cannot sit for more than five minutes because his back will begin to hurt, and he cannot stand without having to prop himself up. (Tr. 56.) He can walk only one block before he requires five or ten minutes of rest, as he loses his breath. (Tr. 56-57.) He cannot climb stairs. (Tr. 57.)

Plaintiff believes he suffers "[p]robably a little . . . depression." (Tr. 57.) Aside from his brief stay at a psychiatric hospital for hallucinations, he has never seen a mental health professional except in relation to his applications for Social Security benefits. (Tr. 57.) None of his doctors suggested that Plaintiff see a mental health professional, and Plaintiff has never been on medication for any mental health problems. (Tr. 58.)

### 2. Vocational Expert's Hearing Testimony

The ALJ presented the VE with the following hypothetical:

> Assume please a right hand dominant individual who is functionally illiterate and past relevant work as you've identified for the claimant with the following limitations. . . . The individual can lift and carry up to 20 pounds occasionally and 10 frequently. Stand and/or walk six hours in an eight hour workday. The individual can only occasionally stoop, kneel, crouch and climb ramps or stairs. No crawling or climbing ladders, ropes, or scaffolds or working at unprotected heights. The work should not require concentrated exposure to fumes, noxious odors, dust or gases. The individual is able to understand, remember, and carry out only short and simple instructions. No more than occasional interaction with the general public or co-workers or supervisors. No more than ordinary and routine changes in work setting or duties. Only simple work related decisions and the job should not require reading, writing or math.

(Tr. 73.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform entry-level, unskilled, light work as a housekeeper (for which there were approximately 250 positions regionally and 200,000 positions nationally), and as a rag sorter (for which there were approximately 100 positions regionally and 80,000 positions nationally). (Tr. 73-75.) The VE verified that his testimony was consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupation (Tr. 76), and that the numbers of jobs were derived from the Labor Market Information Division of the Ohio Job and Family Services (Tr. 74).

The ALJ then asked the VE whether such a person who missed approximately three work days per month would be able to perform the work to which the VE testified. (Tr. 76.) The VE responded that such a person would not be able to perform those jobs. (Tr. 76.)

Plaintiff's attorney then asked the VE whether the ALJ's hypothetical person could perform the jobs to which the VE testified if that person were unable to perform activities within a regular schedule, maintain attendance, or be punctual 20 percent of the time. (Tr. 77.) The VE testified that such a person would not be able to perform the jobs to which he testified. (Tr. 77.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any

7

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

8

404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged disability onset date.

3. The claimant has the following severe impairments: lumbosacral spine degenerative disc disease, coronary artery disease, asthma, depressive disorder NOS, and generalized anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the requirements of work activity except as follows: He can lift/carry up to 20 pounds occasionally and 10 pounds frequently, and sit and/or walk for up to 6 hours in an eight-hour workday. He can only occasionally stoop, kneel, crouch and climb ramps/stairs. He should not crawl, climb ladders/ropes/scaffolds, or work at unprotected heights. He should not work with concentrated exposure to fumes, noxious odors, dusts, or gases. He is able to understand, remember and carry out only short and simple instructions. He cannot interact with the general public, co-workers or supervisors more than occasionally. His job should not require more than ordinary and routine changes in work setting or duties, and he is able to make only simple work-related decisions. His job should not require reading, writing, or math.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2005 through the date of this decision.

(Tr. 34-43.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy,* 594 F.3d at 512.

### B. The ALJ's Assessment of Plaintiff's Medical Sources

Plaintiff argues that the ALJ improperly gave more weight to the opinions of a non-examining source, Dr. Renny, than the more restrictive opinions of a more recent examining source, Dr. Gilliam, in his RFC assessment.  Plaintiff contends without any citation to supporting legal authority that "[t]here is no basis, in the regulations or case law, for an ALJ to accept older findings from a non-examining source over the more recent findings of an examining source." (Pl.'s Br. 12.)  For the reasons set forth below, the Court finds that Plaintiff's argument lacks merit.

Generally, more weight is given to the opinions of a medical source that has examined a claimant than to a medical source that has not examined the claimant.  20 C.F.R. 404.1527(d)(1).  However, the weight given to a medical source is determined by more than just whether the source examined the claimant.  Other considerations include:  the medical source's treatment relationship with the claimant; the supportability of the source's opinions, particularly with medical signs and laboratory findings; the consistency of the source's opinions with the record as a whole; or the extent to which the source is familiar with the other information in the claimant's case record.  20 C.F.R. 404.1527(d)(2)-(6).  A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.  S.S.R. 96-2p.

The ALJ found that, although Dr. Gilliam's opinions would render Plaintiff able to perform only sedentary work, Dr. Gilliam's opinions were not entitled to significant

11

weight because: (1) Dr. Gilliam saw Plaintiff only once;[1] (2) Dr. Gilliam's opinions were not supported by objective clinical and diagnostic findings, but rather appeared based on Plaintiff's subjective statements of his limitations; (3) Dr. Gilliam's report that Plaintiff could not raise his arms very far was contradicted by his finding that Plaintiff was not significantly limited in his abilities to reach and handle; and (4) Dr. Gilliam's opinions were not consistent with the rest of the record evidence, as the record indicated that Plaintiff suffered only mild lumbar degenerative changes without focal neurological deficits, which was inconsistent with Dr. Gilliam's opinion that Plaintiff could stand and walk for only 2 to 3 hours in an 8-hour day. (Tr. 40.) Indeed, Dr. Gilliam did not provide an explanation of the bases for his opinions but instead directed any reader to "see exam," and Dr. Gilliam's alleged examination records do not appear to be in the record.

Plaintiff has not explained how, or cited to any legal authority that supports the conclusion that the ALJ's bases for giving Dr. Gilliam's opinions less weight than Dr. Renny's opinions was improper.[2] Accordingly, this assignment of error lacks merit.

---

[1] Plaintiff contends that the ALJ's observation that Dr. Gilliam saw Plaintiff only once is not accurate because Dr. Gilliam saw Plaintiff again on June 3, 2009. (Pl.'s Br. 12.) Plaintiff attached to his Brief on the Merits a functional assessment of Plaintiff performed by Dr. Gilliam on that date. (Doc. No. 12, Attach. 1.) Dr. Gilliam's June 3, 2009, assessment was not before the ALJ when the ALJ made his decision, but Plaintiff insists that this Court "has a right to consider it." (Pl.'s Reply 5.) The Court disagrees, however, and will not consider it, as the Court may not consider in its substantial evidence review evidence that was not before the ALJ when he made his decision. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

[2] Rather than challenge the supportability of the ALJ's rationale, Plaintiff accuses the ALJ of purposely rejecting Dr. Gilliam's opinions in an effort to achieve a pre-determined conclusion that Plaintiff is not disabled. (Pl.'s Br. 13-14.) This accusation is wholly unsubstantiated and inappropriate, and counsel is expected to refrain from such discourteous discourse in the future.

**C. The Commissioner's Burden of Proving a Significant Number of Jobs in the National Economy that Plaintiff Could Perform**

Plaintiff argues that the Commissioner failed to meet his burden of proving the existence of a significant number of jobs in the national economy that Plaintiff could perform because the ALJ's hypothetical to the VE did not accurately portray Plaintiff's limitations as set forth by Dr. Deatrick. For the reasons set forth below, the Court disagrees.

At the fifth and final step of an ALJ's analysis, the ALJ must determine whether, in light of the claimant's residual functional capacity, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). At this step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). If the Commissioner satisfies this burden, the claimant will be found not disabled. C.F.R. § 404.1520(g)(1).

To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman* v. *Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments. *Workman,* 105 F. App'x at 799 (quoting *Varley,* 820 F.2d at 779).

The ALJ's first hypothetical question to the VE included, in relevant part, the following: the ability to understand, remember, and carry out only short and simple instructions; have no more than occasional interaction with the general public, co-workers, or supervisors; cope with no more than ordinary and routine changes in the work setting or duties; make only simple work-related decisions; and perform work that does not require reading, writing, or math. (Tr. 73.) The ALJ relied on this hypothetical, and the VE's testimony in response, to determine that Plaintiff could perform a significant number of jobs in the national economy. Plaintiff argues that the first hypothetical does not adequately portray Plaintiff's limitations because it does not include the limitations opined by Dr. Deatrick that Plaintiff was moderately limited in his abilities to maintain concentration, persistence, or pace; complete a normal workday or workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number of rest periods.

Plaintiff's argument rests on the assumption that the ALJ gave weight to these aspects of Dr. Deatrick's opinions. The ALJ explained in his decision, however, that he gave weight specifically to Dr. Deatrick's findings that Plaintiff had a normal mental status examination and could perform basic daily living activities, maintain superficial social interaction, and perform simple tasks in a routine work setting with only occasional interaction with co-workers and supervisors, as *that* opinion was supported by the overall record. (Tr. 41.) An ALJ is required to include in his hypothetical to a VE only those limitations that he finds credible. *Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)*. Plaintiff has provided no basis to conclude that the ALJ gave any weight to the other moderate limitations to which Dr. Deatrick opined,

and that the ALJ should have included those limitations in his hypothetical.

Assuming, however, that the ALJ gave weight to Dr. Deatrick's opinions in their entirety, Plaintiff's argument still fails. Plaintiff cites *Ealy v. Commissioner of Social Security,* 594 F.3d 504 (2010), to support his argument that the ALJ was required specifically to express in his hypothetical Dr. Deatrick's opinions that Plaintiff was moderately limited in his abilities to maintain concentration, persistence, or pace; complete a normal workday or workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number of rest periods. *Ealy*, however, is distinguishable.

In *Ealy*, a state agency psychological consultant specifically limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Ealy*, 594 F.3d at 516. At Ealy's hearing, the ALJ asked the VE, in relevant part, to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* The ALJ provide further hypotheticals to the VE but ultimately incorporated his first hypothetical in his RFC determination. *Id.* The court found that the ALJ's hypothetical did not adequately portray Ealy's limitations because it did not describe the psychological consultant's opinion with the same specificity that the consultant provided. *Id.*

Here, Dr. Deatrick's opinions do not indicate specific limitations on Plaintiff's abilities to maintain concentration, persistence, or pace; complete a normal workday or workweek without interruptions from psychologically based symptoms; and perform at a

15

consistent pace without an unreasonable number of rest periods. Rather, Dr. Deatrick determined that Plaintiff's mental status was essentially normal; and explained that, although Plaintiff showed "some" deficits in concentration, persistence, and pace, he was capable of very basic socialization, his adaptive skills were essentially intact, and he was able to perform simple, repetitive tasks. (Tr. 291.) The limitations expressed in the ALJ's first hypothetical—the ability to understand, remember, and carry out only short and simple instructions; have no more than occasional interaction with the general public, co-workers, or supervisors; cope with no more than ordinary and routine changes in the work setting or duties; make only simple work-related decisions; and perform work that does not require reading, writing, or math—adequately account for Dr. Deatrick's opinions. See *Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) ("The hypothetical questions [the ALJ] asked of the vocational expert could have been more complete, but we do not find that they inaccurately portrayed [the] plaintiff's substantiated limitations.").

Plaintiff suggests that Dr. Deatrick's "moderate" limitations are defined as described in the second and third hypotheticals to the VE, which provided that the hypothetical person would miss approximately three work days per month, or would be unable to perform activities within a regular schedule, maintain attendance, or be punctual 20 percent of the time. Therefore, Plaintiff continues, the Commissioner's finding of a significant number of jobs is not supported by substantial evidence because the VE testified that a person with such limitations would not be able to perform the work to which he testified. Plaintiff does not, however, cite to any aspect of the record evidence, or to any legal authority in support of his contention that Dr. Deatrick's

16

"moderate" limitations are, or should be so defined.

For the foregoing reasons, the Court finds that this assignment of error lacks merit. Because Plaintiff has not shown that there are defects in the ALJ's hypothetical or the VE's testimony, the Court further finds that the VE's testimony provides substantial evidence for the ALJ's finding that Plaintiff is capable of performing a significant number of jobs in the national economy.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED and judgment be entered in favor of the Commissioner.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: July 29, 2011

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of this notice. **28 U.S.C. § 636(b)(1)**. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)**.